**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-00744-CMA

JAMES R. DAVID II,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

     The Commissioner.

---

**ORDER OVERRULING ADMINISTRATIVE LAW JUDGE'S DECISION AND REMANDING CASE FOR FURTHER DETERMINATIONS CONSISTENT WITH THIS ORDER**

---

This is a social security benefits appeal brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff James R. David II challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for benefits under Title XVI, the Supplemental Security Income program. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). Plaintiff argues that the ALJ committed three errors, at steps four and five of the Social Security Administration's five-step sequential evaluation process,[1] when he rendered his opinion, namely:

---

[1] That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work, based on her residual functional capacity (RFC); and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proof

(1)     At Step 4, the ALJ failed to base his findings concerning Plaintiff's residual

        functional capacity on substantial evidence; the ALJ impermissibly gave

        "little or no weight" to the treating and examining sources' reports;

(2)     The ALJ did not properly evaluate Plaintiff's credibility; and

(3)     At Step 5, the ALJ failed to develop fully the record to determine whether

        the vocational expert's testimony conflicts in any way with the definition of

        jobs found in the *Dictionary of Occupational Titles* ("DOT") and to

        reconcile any discrepancies between the DOT job definitions and the

        vocational expert's testimony.

Plaintiff requests an order granting a favorable decision and remand under 42 U.S.C.

§ 405(g), solely for the purpose of awarding benefits.  (Doc. # 11 at 30.)[2]  After

considering Plaintiff's arguments and those of the Commissioner, and for reasons

discussed below, the Court overrules the denial of supplement security income and

remands for further determination consistent with this Order.

---

from steps one through four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[2]  All references to page numbers are to the numbering used by the Court's CM/ECF docketing system and not to the documents' original numbering.

# I. BACKGROUND[3]

Plaintiff was born on January 15, 1960, and was 46 years old when he filed the claim for Social Security Disability benefits and Supplemental Security Income, on October 11, 2006.  (AR 76-86.)  He alleged a disability onset date of July 1, 2006.  (AR 76.)  His claim was denied.  (AR 48-48A, 54-56.)  Plaintiff subsequently requested a hearing before an administrative law judge (ALJ), which was held on April 3, 2008 ("April 3, 2008 Hearing").  (AR 47, 415-52.)  At the hearing, Plaintiff changed the disability onset date to September 25, 2006, which was the protective filing date.  (AR 87, 419.)  Accordingly, Plaintiff relinquished his claim for disability insurance benefits because his selected disability onset date was after the date he was last insured, namely December 31, 2000.  (AR 419.)  However, Plaintiff's claim for Supplemental Security Income remained.  On June 13, 2008, the ALJ issued a decision denying Plaintiff's claim for Supplemental Security Income ("June 13, 2008 Decision").  (AR 19-36.)  The Appeals Council denied Plaintiff's request for review.  (AR 7-11.)

Accordingly, Plaintiff initiated the instant action, by filing a complaint on April 2, 2009.  (Doc. # 3.)  The Social Security Administrative Record was filed with the Court on June 8, 2009.  (Doc. # 8.)  Plaintiff filed his Opening Brief on July 18, 2009.  (Doc. # 11.)  Defendant responded on August 27, 2009 and Plaintiff replied on September 11, 2009.  (Doc. ## 12, 13, respectively).  The Court held a hearing on December 14, 2009, after which the matter was taken under advisement.  (Doc. # 17.)

---

[3] A brief recitation of the facts is set forth below.  The Court will discuss additional facts where necessary to aid in its analysis of the issues.

Plaintiff has an 11th grade education.  Plaintiff alleges that he became disabled on September 25, 2006, when he was 46 years old, because of hepatitis C, back and leg problems, adult attention deficit disorder, and carpal tunnel syndrome in both hands. Plaintiff previously worked as a drywall installer and stock clerk.

## A.    ADMINISTRATIVE HEARING

During his testimony at the April 3, 2008 Hearing, Plaintiff stated that he did not see a psychiatrist, psychologist, counselor, or therapist on a regular basis.  Plaintiff also stated that he takes the following medications: Remeron, 30 milligrams at night; Flexeril, 10 milligrams, three times a day; Naproxen, 500 milligrams at night; and Aleve and Tylenol during the day.  Plaintiff stated that he drinks alcohol, (*i.e.*, less than a six pack of beer) about once or twice a week, and used to use cocaine, but stopped about a year-and-a-half ago.

Plaintiff also testified as to the severity of his physical impairments.  (AR 433-436.)  With respect to his right wrist, in cold weather, Plaintiff experiences pain that radiates from his wrist into his shoulder and to the right side of his neck.  He has difficulty holding a bar of soap in the shower, shaving, and washing his hair.  (AR 435-436.)  With respect to Hepatitis C, Plaintiff has experienced a lot of fatigue, but no pain in his abdomen.  Finally, with respect to his back pain, Plaintiff testified that he obtains treatment from a chiropractor usually twice a week.  He cannot sleep on his back and he experiences pain after sitting or standing for a period of time.

Plaintiff also testified as to his physical abilities.  (AR 437-441.)  He testified that he can: lift a maximum of 20 pounds, "but not all day"; sit for an hour at a time, for a

maximum of four hours in an eight-hour day; stand for fifteen minutes at a time; climb

a couple of flights of stairs; bend down with both knees on the ground; and squat.

Plaintiff also testified that he needs to lay down four hours during an eight-hour day.

With respect to Plaintiff's panic attacks and anxiety, Plaintiff stated that he

sometimes misses doctor appointments because he "get[s] confused and depressed

and worr[ies] about if [he's] going to make it to the bus stop on time [and] worr[ies]

about if [he's] on the right bus." (AR 441.) Finally, Plaintiff described his daily activities,

which included washing dishes, doing laundry, sitting outside and watching airplanes fly

overhead, watching television, sifting through coupons, and reading his horoscope.

(AR 441-442.)[4]

Also at the hearing, Nancy Winfrey, Ph.D., a psychologist, testified as to

Plaintiff's medically determinable impairments. Upon review of Plaintiff's medical

records, Dr. Winfrey concluded that Plaintiff suffers from an affective disorder, and

opined that Plaintiff suffers mild to moderate limitations in his activities of daily living.

In particular, Dr. Winfrey noted that Plaintiff is able to travel independently on public

transportation, run errands, and prepare his own food. Dr. Winfrey further opined that

Plaintiff suffers moderate limitations in his ability to function socially, moderate

limitations in his ability to interact appropriately with the public, and mild-to-moderate

limitations in his ability to interact with supervisors and co-workers. (AR 427, 429.) In

---

[4] In conjunction with Plaintiff's application for supplemental security income, Plaintiff completed a Function Report in which he described his daily activities as follows: "Shower, ride bicycle or walk to bus, take bus to doctor/social worker [and] other appointments. Day labor such as vacuum stairway, clean laundry room, mow lawn, patch blacktop, paint/spot repair walls, repair furniture, set up folding chairs at food bank. Read library books or newspaper at library. Make telephone calls. Watch TV. Go to bed." (AR 109.)

particular, Dr. Winfrey noted that Plaintiff suffers "pretty significant" panic attacks, which appear to be "fairly debilitating," and social anxiety, or a fear of being around other people and crowds. (AR 427.) Nevertheless, Dr. Winfrey only assessed Plaintiff with a "moderate" limitation in his ability to interact appropriately with the public. (AR 429.)

Dr. Winfrey also opined that Plaintiff suffers mild limitations in his concentration, persistence, and pace, as well as his ability to understand, remember, and carry out complex instructions. (*Id.* 427, 429.) Further, Dr. Winfrey noted that Plaintiff performed well in a mental status exam conducted in December 2006.

Finally, Kari Jensen, a vocational expert ("VE"), testified. She opined on a series of hypothetical questions posed by the ALJ. (AR 445-450.) The ALJ inquired about what jobs would be available for an individual with the following residual functional capacity (RFC):

> occasionally lift up to 20 pounds, frequently 10 bilaterally; can sit two
> hours per occasion at least six hours a day; can [stand and] walk two
> hours per occasion at least six hours a day . . . . [A]ssume regular breaks
> which are those that occur at approximately every two-hour point in an
> eight-hour shift. This person should not climb ladders or scaffolding,
> should not work at unprotected heights, or where there's a requirement for
> walking on rocky surfaces. This person cannot reach overhead bilaterally.
> This person can occasionally climb stairs, occasionally stoop, knee[l]
> crouch, crawl, occasionally be exposed to extreme heat and cold,
> occasionally work with or near open dangerous moving machinery, and
> occasionally drive as a requirement of the job. This person can frequently
> climb ramps, frequently balance, frequently reach, handle, finger and the
> reach is all but overhead. This person can frequently be exposed to
> wetness and humidity and frequently be exposed to vibration and
> frequently be exposed to fumes, odors, dust, and pulmonary irritants.
> In addition, this person has the ability to understand, remember, and carry
> out those kinds of work instructions and procedures that can be learned
> in a period of approximately 30 to 60 days where there's only occasional
> work interaction with co-workers, the public, and supervisors.

(AR 445-446.)  In response, the VE identified the following jobs: electronics worker, production assembler, and cafeteria attendant, all of which have an SVP of 2.  (AR 446.)  The VE acknowledged that the DOT for these jobs identified "reaching" as a job requirement.  However, despite Plaintiff's inability to reach overhead, the VE concluded that Plaintiff could perform these jobs because, in her opinion, "the majority of the reaching is in front[.]"  (*Id.* at 448.)

The ALJ then made the following modifications to the first hypothetical:

Stand 30 minutes per occasion four hours a day, walk 30 minutes per occasion four hours a day, sit one hour per occasion six hours a day, all else remains as in the first hypothetical.

(*Id.* at 447.)  In response, the VE stated that these modifications would eliminate that cafeteria attendant position.  (AR 447.)

The ALJ then modified the second hypothetical by changing handling and fingering to occasional.  (*Id.*)  In response, the VE concluded that this modification would render impossible the individual's ability to perform either of the two remaining jobs, namely electronics worker or production assembler.  (*Id.*)  However, the VE stated that the individual could work as a surveillance system monitor, a sedentary position with an SVP of 2.  (*Id.*)

**B.     ADMINISTRATIVE DECISION**

On June 13, 2008, the ALJ denied Plaintiff's claim for Supplemental Security Income.  (AR 22-36.)  In pertinent part, the ALJ made the following findings:

- Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; bilateral wrist/hand parasthesia, right

worse than left; history of hepatitis C; major depressive disorder; posttraumatic stress disorder; and alcohol dependence.

• Plaintiff has the residual functional capacity (RFC) to perform light work, with the following limitations: he can lift and carry 20 pounds occasionally and 10 pounds frequently bilaterally; sit 2 hours per occasion and at least 6 hours in an 8-hour day; and stand/walk 2 hours per occasion and at least 6 hours in an 8-hour day. Plaintiff can occasionally climb stairs, stoop, kneel, crouch, and crawl; frequently climb ramps and balance; but otherwise should never climb ladders/scaffolds, work at unprotected heights, or walk on rocky surfaces. He should never reach overhead bilaterally, but can frequently handle, finger and reach in all other directions. Additionally, Plaintiff can occasionally be exposed to extreme heat and cold, work around open, dangerous machinery, and drive; and frequently be exposed to wetness, humidity, vibration, fumes/odors and other pulmonary irritants.

• Mentally, the claimant can understand, remember and carry out those types of work instructions and procedures that can be learned within a period of 30-60 days with occasional interaction with supervisors, co-workers, and the public; the medical evidence does not show that Plaintiff has significant cognitive problems or severe issues relating to others. During mental status examination, Plaintiff was observed to be relaxed, his behavior and affect were appropriate, and his thought processes appeared to be organized for the most part.

• Upon consideration of the claimant's age, education, work experience, and residual functional capacity, the ALJ determined that suitable jobs exist in the national economy, such as electronics worker, production assembler, and cafeteria attendant. Despite the fact that Plaintiff is precluded from overhead reaching, the ALJ deemed these jobs suitable because overhead reaching is not identified with specificity in the DOT for these positions.

Plaintiff sought review of the ALJ's decision by the Appeals Council, but such request was denied. (AR 7-11.) On April 2, 2009, Plaintiff filed a Complaint, seeking judicial review of the denial of supplemental security income. (Doc. # 3.)

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

### B.  EVALUATION OF DISABILITY

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a *continuous* period of not less than *twelve* months." 42 U.S.C. § 1382c(a)(3)(A) (2006) (emphasis added).  "[A] medical finding of disability is not based solely on objective test results. It includes an evaluation of the patient's medical history and the physician's observations of the patient, and necessarily involves an evaluation of the credibility of the patient's subjective complaints of pain.  A medical opinion based on all these factors is medical evidence supporting a claim of disabling pain, even if the objective test results, taken alone, do not fully substantiate the claim." *Nieto v. Heckler*, 750 F.2d 59, 61-62 (10th Cir. 1984).

**C.    PLAINTIFF'S FIRST ISSUE:  WHETHER THE ALJ's RFC DETERMINATION
WAS BASED ON SUBSTANTIAL EVIDENCE.**

Plaintiff argues that the ALJ's assessment of Plaintiff's RFC was flawed on two
primary grounds.  First, the ALJ improperly rejected certain opinions of Plaintiff's
treating and examining medical sources, in favor of a consultative physician, Claudia
Elsner.  In particular Plaintiff contends that the ALJ failed to properly evaluate opinions
from sources not considered to be "acceptable medical sources," pursuant to Social
Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006), namely the opinions of Todd
Smith, a physician's assistant, and Dr. Garrett Rock, a chiropractor, the only two
treating source opinions regarding Plaintiff's physical functional capacity.  (Doc. # 11
at 17.)  Second, Plaintiff contends that the ALJ cherry-picked through medical reports
and improperly substituted his own lay opinion for that of a medical expert, namely
Dr. Meredith Campbell, a consultative psychologist.  (*Id.*)

Pursuant to Social Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006),
when rendering a disability determination, the ALJ considers all the available evidence
in the claimant's case record, including, but not limited to, "objective medical evidence;
other evidence from medical sources, including their opinions; statements by the
individual and others about the impairment(s) and how it affects the individual's
functioning; information from other 'non-medical sources' and decisions by other
governmental and nongovernmental agencies about whether [the claimant] is
disabled[.]"  "Acceptable medical sources" include licensed physicians and
psychologists.  *Id.* at *1; *see also* 20 C.F.R. § 416.913(a).  Only "acceptable medical

sources" will be considered "treating sources," and only they can provide Commissioner with medical opinions, which opinions may be entitled to controlling weight. *Id.* at *2.

The ALJ may use evidence from "other sources" to show the severity of the individual's impairments and the impairments' impact on a claimant's ability to function. *Id.* "Other sources" include, but are not limited to, physician's assistants and chiropractors. *Id.* "Information from these 'other sources' [unlike acceptable medical sources] cannot establish the existence of a medically determinable impairment[,]" but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*; *see also Shubargo v. Barnhart*, 161 Fed. Appx. 748, 751 (10th Cir. 2005) (unpublished). However, an ALJ is not required to give controlling weight to the opinions of other sources, such as a physician's assistant or chiropractor. *Id.* Rather, the ALJ should consider information from "other sources" to determine whether such information "support[s] or contradict[s] a medical opinion." S.S.R. 06-03p, 2006 WL 2329939, at *4. Generally, the ALJ should explain the weight given to the opinions from "other sources," "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

1. <u>Medical Opinions of Treating Source, Physician's Assistant</u>

Plaintiff received treatment from physician's assistant Neil Smith for his complaints of pain. During several of these examinations, Mr. Smith noted the status

of Plaintiff's affective disorder and depression, as well as the effectiveness of Plaintiff's medication.

On October 2, 2006, Mr. Smith, examined Plaintiff in connection with his complaints of upper extremity weakness and numbness. (AR 207.) Plaintiff was found to have a positive Phalen's test bilaterally and was diagnosed with carpal tunnel syndrome, bilateral 5th metacarophalangeal joint deformity, and depression, for which Plaintiff was directed to have a follow-up evaluation as soon as possible. (*Id.*) The following day, Mr. Smith completed an Initial Medical Examination for the Colorado Department of Human Services, in connection with Plaintiff's application for disability benefits through a State of Colorado program. (AR 199-200.) In completing the form, Mr. Smith checked a box reflecting that Plaintiff "has been or will be disabled to the extent [he is] unable to work at any job for a total period of six (6) or more months due to a physical or mental impairment that is disabling." (AR 199.) In support, Mr. Smith noted that Plaintiff has been diagnosed with carpal tunnel syndrome, needs to be evaluated by an orthopedic hand specialist, and may need surgery in order to recover. (AR 200.) Mr. Smith also noted that Plaintiff was diagnosed with bilateral 5th metacarophalangeal joint deformity and depression. (*Id.*)

By January 29, 2007, Mr. Smith noted that Plaintiff's Remeron prescription was "working very well for him," and that Plaintiff denied any suicidal ideation or plan. (AR 217.) Mr. Smith made similar notations in March 2007. (AR 216.) On August 17, 2007, Mr. Smith noted Plaintiff's continued complaints of pain in his upper extremities and concluded that such neuropathy was likely due to his alcohol abuse. (AR 215.)

However, on March 18, 2008, Mr. Smith noted Plaintiff's complaints of diminished sensation and lack of strength in his hands and concluded that such symptoms were the result of carpal tunnel syndrome and hand parasthesias. (AR 214.)

On October 24, 2008, Mr. Smith noted that Plaintiff "appears to display symptoms of panic disorder with agoraphobia and reported having panic attacks 'almost everyday.'" (AR 204.) Mr. Smith further noted that Plaintiff reported "thinking about suicide 'almost everyday for the past 30 years,'" but denied having a plan." (*Id.*)

In the June 13, 2008 Decision, the ALJ determined that Mr. Smith's treatment notes failed to support Plaintiff's testimony concerning his degree of pain and his physical limitations. Further, the ALJ gave "little or no weight" to Mr. Smith's disability determination because: (1) disability determinations are specifically reserved for the Commissioner, pursuant to 20 C.F.R. 416.927(e) and Social Security Ruling 96-5p and are not made by an acceptable medical source; (2) Mr. Smith's disability determination does not appear to be supported by his own exam notes[5] or Plaintiff's activities of daily living and does not include any specific limitations; (3) the disability determination is also not supported by Claudia Elsner, M.D.'s[6] "more thorough" examination on December 18, 2006; (4) the disability determination was made for state social services and not for the Social Security Administration; and (5) Mr. Smith, a physician's assistant, is not an "acceptable medical source." (AR 32-33.)

---

[5] The ALJ also rejected Mr. Smith's disability determination upon construing certain exam notes to mean that Plaintiff's upper extremity neuropathy would improve if he ceased drinking alcohol. (AR 33; *see also* August 17, 2007 Mr. Smith Exam Notes, AR 215 ("UE neuropathy, likely alcoholic").)

[6] Dr. Elsner is not a treating physician. Rather she performed a consultative examination. (AR 210-211.)

Plaintiff contends that the ALJ's decision to give little weight to Mr. Smith's conclusions was improper.  The Court disagrees.

Although Mr. Smith considered Plaintiff disabled for purposes of a state disability program, Mr. Smith's assessment appeared limited to Plaintiff's ability to perform his prior job as a drywall installer.  (*See*, *e.g.*, AR 207) (noting that Plaintiff worked in construction and his pain "keeps him from being [able] to perform his construction duty").  Although Mr. Smith has repeatedly noted Plaintiff's complaints of pain, the treatment notes are bereft of any notations regarding the impact the pain has on Plaintiff's daily existence.  Additionally, Dr. Elsner observed Plaintiff to "move[ ] about fluently without any signs of musculoskeletal distress," have no problems with standing, "perform well with tandem walk, toe walking, and heel walking," and perform tasks involving fine manipulation.  (AR 210-11.)  Plaintiff was also able to "sit like a frog" and "get up from this position without assistance."  (AR 211.)  To the extent that Plaintiff expressed having any difficulty with tandem walking, such difficulty did not appear to be significant.  (*Id.*) ("With tandem walk, he immediately announces that this is difficult. He does two steps and then holds on to things, but immediately keeps on walking with hands up.").

In addition, as previously noted, at the Hearing, Plaintiff, himself, testified as to his physical abilities, which included his ability to lift a maximum of 20 pounds, sit for an hour at a time, for a maximum of four hours in an eight-hour day, stand for fifteen minutes at a time, and climb a couple of flights of stairs.  (AR 437-441.)  His daily activities include simple household chores, watching television, sifting through coupons,

and reading his horoscope.  (AR 441-442.)  Moreover, Plaintiff informed Dr. Claudia

Elsner that he enjoys spending time at the library in Broomfield and is independent in

self-care.  (AR 209.)

Accordingly, the Court finds that the ALJ's decision to accord Mr. Smith's

opinions "little or no weight" is supported by substantial evidence in the record.  The

Court need not consider the ALJ's other reasons for giving "little or no weight" to

Mr. Smith's opinions.

2. <u>Medical Opinions of Treating Source, Chiropractor</u>

The ALJ also gave less weight to the medical opinions of Garrett Rock, a

chiropractor, and Plaintiff's second treating source.

On September 18, 2007, Dr. Rock determined that Plaintiff suffered from

significant degenerative disc disease of the cervical and lumbar spine with motor

weakness, restricted spinal range of motion, and severe muscle spasm.  (AR 222.)  In

support, Dr. Rock cited to various test results, all of which revealed pain in the low back,

localized pain bilaterally, cervical compression, nerve compression, sacroiliac pain,

sciatic pain, sensory deficit in the right hand, motor weakness and decreased reflexes in

the right biceps, and restricted range of motion in the lower back, reduced cervical

range of motion, and restricted vertebral motion.  (*Id.*)  Dr. Rock's notes also referred to

"significant X-ray findings."  (*Id.*)

The ALJ gave less weight to Dr. Rock's opinions for three reasons: (1) the record

lacked any evidence of significant treatment since the alleged onset date; the record

contained only two examinations; (2) Dr. Rock's records were inconsistent with, or

15

unsupported by, the weight of the other evidence, including the treatment records of

Mr. Smith, Plaintiff's primary care provider, who did not document any back problems

or complaints of back pain; and (3) Dr. Rock is not an "acceptable medical source."

(AR 33.)  In sum, the ALJ found Dr. Rock's opinions to be less persuasive than

Dr. Elsner's "well supported" evaluation.  (*Id.*)

Plaintiff contends that the ALJ impermissibly relied upon a dearth of treatment

records to accord less weight to Dr. Rock's assessment.  In support, Plaintiff cites to

20 C.F.R. § 416.912(e), which states that, "[w]hen the evidence [the Commissioner]

receives from [the] treating physician . . . or other medical source is inadequate for [the

Commissioner] to determine whether [a claimant is] disabled," the Commissioner will

take steps to obtain additional information, including "recontact[ing] [the claimant's]

treating physician . . . or other medical source to determine whether the additional

information . . . is readily available."  However, in the instant case, the ALJ did not

conclude that Dr. Rock's records were inadequate to determine whether or not Plaintiff

was disabled.  Rather, ALJ determined that Dr. Rock's records, in combination with

the entire record, were adequate to determine that Plaintiff was not disabled.

As set forth in the June 13, 2008 Decision, the ALJ weighed all the evidence to

determine that Plaintiff was not physically disabled and that the record was "void of

significant findings that would preclude [Plaintiff] from light exertional activity."  (AR 33.)

This Court may not reweigh the evidence and substitute its judgment for the ALJ's

judgment.  *See White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Accordingly,

the Court finds no error in determining that Dr. Rock's assessment was "less persuasive" than the evaluation of Dr. Elsner, the consulting physician.

      3.    <u>Opinions of Consulting Psychologist, Dr. Meredith Campbell</u>

Shortly after the April 3, 2008 Hearing, Plaintiff was seen by Dr. Meredith Campbell, who performed a consultative psychological evaluation, at the ALJ's request. (AR 231-237.) With respect to Plaintiff's affective disorder, during the evaluation, Plaintiff stated that he has to plan trips to the grocery store one week in advance, he is afraid of riding the bus to get to the grocery store, and he tries to avoid people everyday. (AR 232-33.) Plaintiff expressed a belief that "Everybody is out to use [him] for [his] money." (AR 233.) In pertinent part, Dr. Campbell noted that Plaintiff may be under-reporting his current substance abuse. (*Id.*)

Dr. Campbell diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, and alcohol dependence. (AR 237.) During a depression screening, Plaintiff reported decreased energy, tearfulness, hopelessness, helplessness, worthlessness, irritability, lack of an appetite, difficulty concentrating, memory problems, and suicide attempts on two prior occasions. (AR 233.) Plaintiff also stated that he "freak[s] out when people talk to [him]." (*Id.*) During an anxiety screening, Plaintiff reported having daily panic attacks, which can last for hours and during which he sweats, shakes, has shortness of breath and chest pain, and experiences nausea. (AR 234.) Plaintiff also reported some mild agoraphobia. (*Id.*) Finally, during a screening for post-traumatic stress disorder ("PTSD"), Plaintiff reported having an exaggerated startle response, recurrent nightmares and flashbacks, as well as hyper-

vigilance, ever since having been shot at point blank range with a shot gun in 1972, and after having had guns pulled on him on other occasions. (*Id.*) Dr. Campbell opined that Plaintiff's PTSD may have intensified over the years. (AR 237.)

Finally, after performing various cognitive and intelligence tests, Dr. Campbell assessed Plaintiff with a Global Assessment of Functioning score of 50 and concluded that Plaintiff "falls in the low average range of intellectual functioning." (*Id.*) However, Dr. Campbell concluded that Plaintiff did not exhibit any "significant impairment" that would render him incapable of "sustaining some sort of repetitive type [of] tasks," but also noted that Plaintiff's physical limitations should also be assessed. (*Id.*)

In conjunction with the April 2008 evaluation, Dr. Campbell completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" evaluation form. (AR 238-240.) Regarding Plaintiff's ability to understand, remember, and carry out instructions, Dr. Campbell assessed Plaintiff with the following limitations: (1) mild limitations in his ability to understand, remember, and carry out simple instructions; (2) moderate limitations in his ability to make judgments on simple work-related decisions and understand, remember, and carry out complex instructions; and (3) marked limitations in his ability to make judgments on complex work-related decisions. (AR 238.) Additionally, Dr. Campbell cited to the results of Wechsler Adult Intelligence Scale (WAIS) evaluations, which indicated "borderline intellectual functioning," as well as Plaintiff's history of substance abuse, anxiety, and paranoia, which likely interfere with Plaintiff's intellectual functioning. (*Id.*) Dr. Campbell opined

that Plaintiff's cognitive decline "would likely slow down" if his alcohol use stopped. (AR 235.)

Regarding Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, and respond to changes in a routine work setting, Dr. Campbell assessed moderate limitations. (AR 239.) In support, Dr. Campbell cited to Plaintiff's "moderate paranoia," PTSD symptoms, panic, and agoraphobia. (*Id.*)

In the June 13, 2008 Decision, the ALJ acknowledged that Dr. Campbell conducted "the most detailed evaluation and assessment of [Plaintiff's] mental functioning" and that Dr. Campbell's assessment was persuasive and supported by the "objective and detailed examination findings." (AR 30-31.) Accordingly, the ALJ accorded "great weight" to Dr. Campbell's conclusions about Plaintiff's mental residual functional capacity. (AR 31.) However, as Plaintiff asserts, the ALJ does appear to have cherry-picked through, and ignored, certain aspects of Dr. Campbell's assessment, in favor of the assessment of testifying psychological expert, Dr. Nancy Winfrey, who did not examine Plaintiff and whose opinion is based solely on her review of Plaintiff's medical records.

Notably, Dr. Winfrey's opinions concerning Plaintiff's intellectual functioning contrasted from Dr. Campbell's in several ways. First, Dr. Campbell found mild limitations in Plaintiff's ability to understand, remember, and carry out simple instructions, and moderate limitations in Plaintiff's ability to make judgments on simple work-related decisions; whereas, Dr. Winfrey opined that Plaintiff has no limitations in carrying out simple instructions and mild limitations in making judgments. (AR 428-

429.)  Second, Dr. Campbell found moderate limitations in Plaintiff's ability to understand, remember, and carry out complex instructions; whereas, Dr. Winfrey opined that Plaintiff had mild limitations.  (AR 429.)  Third, Dr. Campbell found marked limitations in Plaintiff's ability to make judgments on complex work-related decisions, whereas, Dr. Winfrey opined that Plaintiff only had mild limitations.  (*Id.*)

The support for the two experts' conclusions also differed.  In support of her conclusions, Dr. Campbell cited to the results of Wechsler Adult Intelligence Scale (WAIS) evaluations, which indicated "borderline intellectual function," as well as Plaintiff's history of substance abuse, anxiety, and paranoia.  (AR 238.)  However, there is nothing in the record indicating what, if anything, Dr. Winfrey relied upon to support her opinion.

Additionally, Dr. Winfrey's opinions concerning Plaintiff's social functioning contrasted from Dr. Campbell's opinions in the following ways.  Where Dr. Campbell found moderate limitations in Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, and to respond to changes in a routine work setting, Dr. Winfrey opined that Plaintiff only had mild to moderate limitations in interactions with supervisors and co-workers.[7]  (AR 239; AR 429.)  In support of her findings concerning Plaintiff's social functioning, Dr. Campbell cited to Plaintiff's "moderate paranoia," PTSD symptoms, panic, and agoraphobia.  (*Id.*)  In contrast, Dr. Winfrey did not indicate what, if anything, she relied upon in reaching her opinion.

---

[7]  The two psychologists agreed that Plaintiff had moderate limitations in his ability to interaction with the public and to respond appropriately to usual work situations and to changes in a routine work setting.  (*Id.*)

The ALJ did not analyze or discuss these obvious contradictions and varying degrees of substantiation between Drs. Campbell's and Winfrey's opinions. Rather, the ALJ merely concluded that "Dr. Winfrey's testimony appears to be consistent with the [RFC] found in this decision and seems to suggest the claimant is capable of understanding, remembering and carrying out those types of work instructions that can be learned in a period of 30-60 days with occasional interaction with the public, supervisors and co-workers." (AR 32.) In this regard, the Court discounts the ALJ's statement that he found "Dr. Winfrey's testimony and opinions persuasive and accords them great weight as they are based upon her review of the record and her knowledge and training as a clinical psychologist." (*Id.*)

In light of the foregoing, the Court finds the ALJ's analysis and conclusions concerning Plaintiff's intellectual and social functioning too cursory. Further, the ALJ fails to address and, therefore appears to ignore, Dr. Campbell's evaluation of Plaintiff as having a Global Assessment of Functioning ("GAF") of 50.[8] (Dr. Campbell's opinion at AR 237.)

Dr. Campbell's evaluation, notations, and opinion concerning Plaintiff's moderate paranoia, panic, and agoraphobia is probative evidence of Plaintiff's mental/psychological limitations. Despite Dr. Campbell's medical records, the ALJ concluded that "there is nothing to suggest that the claimant cannot tolerate occasional interaction with co-workers, supervisors, and the public" or that Plaintiff "would have

_____

[8] As The Commissioner acknowledged in its Response Brief, a GAF score of 50 "indicates serious difficulties in social and occupational functioning." (Response Brief, Doc. # 12 at 14, n.3) (citing American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 40 (4th ed. 1994).

moderate to marked limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting," and Plaintiff is "still able to function satisfactorily." (AR 31.) Although the ALJ made reference to Dr. Campbell's findings, in light of his rejection of Dr. Campbell's opinions, the Court finds the ALJ's consideration and discussion of Dr. Campbell's findings to be too cursory. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (stating that an ALJ "must discuss . . . significantly probative evidence he rejects.").

As the Tenth Circuit previously recognized, opinions of nontreating (examining) sources, such as Dr. Campbell, are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record, such as Dr. Winfrey. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(d)(1), (2), and 416.927(d)(1), (2); S.S.R. 96-6p, 1996 WL 374180, at *2 (July 2, 1996)); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987). Further, an ALJ may not substitute his medical judgment for that of a medical source, or second-guess a medical expert's judgment. *See Winfrey v. Chater*, 92 F.3d 1017, 1022-23 (10th Cir. 1996) (finding that, by imposing his own medical judgment, the ALJ made conclusions about the effects of the plaintiff's mental impairments on his ability to work that did not fairly take into account all the evidence). Based on the deficiencies in the ALJ's assessment of Plaintiff's mental RFC, remand is warranted for a more thorough analysis of Plaintiff's RFC, in light of Dr. Campbell's comprehensive evaluation of Plaintiff's intellectual and social functioning.

**D.      PLAINTIFF'S SECOND ISSUE:  THE ALJ'S EVALUATION OF PLAINTIFF'S CREDIBILITY.**

Plaintiff next contends that the ALJ failed to base his findings regarding Plaintiff's lack of credibility on substantial evidence.  Upon review of the evidence in the record, the ALJ stated that, while the evidence supports the existence of "severe" impairments, the Plaintiff's "statements concerning the intensity, persistence and limiting effects of his symptoms and impairments are not entirely persuasive and [Plaintiff] retains the residual functional capacity as determined above."  (AR 34.)

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal citations and quotations omitted).  As articulated in *Kepler*, an ALJ should consider the following factors when evaluating subjective allegations of pain: (1) whether the objective medical evidence[9] establishes a pain-producing impairment; (2) if so, whether a loose nexus[10] exists between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, claimant's pain is in fact disabling.  *Ia.* at 390.

--------

[9]  "'Objective' evidence is any evidence, whether physiological or psychological, that can be discovered and substantiated by external testing."  *Thompson v. Sullivan*, 987 F.2d 1482, 1488-89 (10th Cir. 1993).

[10]  "[I]f an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence."  *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987).

"Although pain is subjective in that no one can know how much of it a particular nerve stimulus causes another person, many indicators give us some idea how much pain another is feeling." *Luna*, 834 F.2d at 165. When determining whether a claimant's pain is in fact disabling, the ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

In the instant case, the ALJ questioned the credibility of Plaintiff's subjective complaints of pain because of the nature of the Plaintiff's daily activities, which included preparing meals, grocery shopping, household cleaning, washing dishes, doing laundry, mowing the lawn, and using public transportation from time to time. (AR 29.) The ALJ reasoned that "all these activities require significant functional exertion." (*Id.*)

The ALJ also questioned the credibility of Plaintiff's complaints of depression and confusion because Plaintiff "receiv[es] no mental health therapy," other than taking medication. (*Id.*) Further, the ALJ cited to Dr. Campbell's determination that Plaintiff "has no significant cognitive impairment and is capable of sustaining at least repetitive type tasks." (*Id.*) Finally, the ALJ questioned the credibility of Plaintiff's reports of having to lay down four hours during the day and/or take naps throughout the day, on grounds that Plaintiff's daily activities belie such reports and the record contains minimal medical evidence of impairments of a disabling nature.

The Court's independent review of the record reveals that the ALJ's credibility determination concerning Plaintiff's complaints of the disabling nature of his physical impairments and depression is adequately supported. First, to the extent that Plaintiff has been diagnosed with physical impairments, the medical records document the impact on Plaintiff's ability to perform his past relevant work in the construction industry. However, the medical records fail to document consistently the impact of those impairments on Plaintiff's daily activities or his ability to perform other types of work. (*See*, *e.g.*, Treatment Records from Physician's Assistant Mr. Smith, AR 107, 199-200, 214-216.) Although Plaintiff's chiropractor, Dr. Rock, noted on September 18, 2007, that Plaintiff's pain in his back and neck and numbness in his extremities "severely limits [Plaintiff's] activities" and renders Plaintiff "unable to cook, mow the lawn, sleep, and work to his full capacity," at the April 3, 2008 Hearing, eight months later Plaintiff reported to Dr. Campbell, the consultative psychologist, that, on a typical day, his activities include taking the dog for a walk, doing laundry, washing dishes, and preparing simple meals. (AR 232.) Plaintiff also reported that he goes to the grocery store, albeit with great trepidation due to his anxiety, and that he can perform all necessary self-care. (*Ia.*) The ALJ's consideration of Plaintiff's daily activities was proper. *Winslow v. Apfel*, No. 97-2123, 1998 WL 45495, at *2 (10th Cir. 1998) ("statements regarding daily activities are evidence properly considered under the Commissioner's regulations") (citing 20 C.F.R. §§ 404.1529(a)). Plaintiff is correct that the ability to perform household chores, by itself, does not equate to an ability to engage in substantial gainful activity. However, household chores, in combination with

other evidence, may establish that a person is able to engage in substantial gainful activity. *See Manning v. Barnhart*, No. 01-1151, 2001 U.S. Dist. LEXIS 23882, at *16-*17 (D. Kan. Mar. 29, 2002) (unpublished). In the instant case, the ALJ relied on Plaintiff's medical records, an evaluation by a consulting physician, and Plaintiff's own testimony, in addition to evidence regarding Plaintiff's daily activities. Accordingly, the ALJ's analysis was not in error.

Second, the treatment notes of Plaintiff's treating sources are bereft of any indications that Plaintiff's depression is as disabling as Plaintiff indicates or that such depression necessitates frequent napping. Further, Mr. Smith, one of Plaintiff's two treating sources, noted on more than one occasion that Plaintiff's depression is "controlled" and that Remeron, an anti-depressant, is "working very well for him currently" (AR 215-217.)

Unfortunately, the ALJ's credibility determination regarding Plaintiff's testimony concerning his ability to function socially was not based on substantial evidence. In support of this determination, the ALJ merely cited to Plaintiff's lack of mental health therapy and the conclusions of testifying psychological expert, Dr. Nancy Winfrey. However, as discussed above, the Court finds that the ALJ failed to explain sufficiently why he gave Dr. Winfrey's opinions greater weight than those of consulting examining psychologist, Dr. Campbell, who assessed more severe limitations on Plaintiff's ability to function socially. For this reason, remand is warranted, for a more thorough analysis of Plaintiff's intellectual and social functioning.

**E. PLAINTIFF'S THIRD ISSUE: WHETHER THE ALJ'S FINDINGS REGARDING THE JOBS PLAINTIFF CAN PERFORM ARE BASED ON SUBSTANTIAL EVIDENCE.**

Plaintiff contends that the ALJ failed to resolve the conflicts between Plaintiff's assessed RFC and the vocational expert's testimony concerning the jobs Plaintiff could perform. The ALJ determined that Plaintiff could not perform a job that required any overhead reaching. During the hearing, the VE testified that Plaintiff could seek competitive employment as an electronics worker, production assembler, and cafeteria attendant. However, these jobs required "frequent" reaching, as described in the DOT. Although the DOT did not specify the nature of the reaching, the vocational expert surmised that a majority of the reaching is in front.

Plaintiff also contends that the ALJ improperly determined that Plaintiff could seek competitive employment as a cafeteria attendant, despite the determination that Plaintiff could only have "occasional" contact with the public.

The DOT for the cafeteria attendant describes the position as follows:

> Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria or Restaurant.

(Doc. # 11 at 29, Ex. D.)

In response, the Commissioner asserts that a cafeteria worker does not necessarily have more than occasional contact with the public; "[a]lthough the job 'may' involve circulating among diners to serve coffee, this does not necessarily mean that his

would happen frequently – or at all."  (Doc. # 12 at 36) (citing to *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998); S.S.R. 00-4p, 2000 WL 1898704, at *3 (2000)).

The Court is unpersuaded.  "In the Tenth Circuit, whenever there is a conflict between the DOT and expert testimony, the ALJ 'must investigate and elicit a reasonable explanation' for the conflict 'before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.'" *Troy ex rel. Daniels v. Apfel*, 225 F. Supp. 2d 1234, 1240 (D. Colo. 2002) (quoting *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999)).

Upon review of the record, including the transcript from the April 3, 2008 Hearing, the Court finds that the ALJ failed to resolve sufficiently the conflict between the DOT for the identified positions, the vocational expert's testimony, and Plaintiff's assessed limitations, especially that Plaintiff may interact with the public only occasionally and that Plaintiff should avoid overhead reaching.  With respect to Plaintiff's social limitations, while the Commissioner now asserts that the "cafeteria attendant's job may be more focused on other tasks, such as wrapping silverware, that do not involve contact with the public," the ALJ failed to articulate such a reason.  Accordingly, this deficiency warrants remand of this case for further proceedings.  *See*, *e.g.*, *Ferguson v. Astrue*, No. CIV-09-286, 2010 WL 1757303 (W.D. Okla. Apr. 30, 2010) (unpublished).

Further, with respect to Plaintiff's physical limitations, the VE testified that, "in [her] opinion," Plaintiff could still perform the identified jobs because "the majority of the reaching is in front of [the employee]."  (AR 448.)  However, the VE failed to explain upon what her opinion was based, and the ALJ neglected to press this point.  In sum,

the ALJ "failed to elicit a reasonable explanation" from the VE.  Accordingly, the Court

concludes that the ALJ's findings regarding available jobs are not supported by

substantial evidence.  The Commissioner failed to meet his burden of proof at Step

Five; such failure warrants reversal of the denial of benefits and remand to the

Commissioner for further proceedings to resolve the conflict between the DOT for

the identified positions, the vocational expert's testimony, and Plaintiff's assessed

limitations.  *See Troy ex rel. Daniels v. Apfel*, 225 F. Supp. 2d 1234, 1241 (D. Colo.

2002) (citing *Evans v. Chater*, 55 F.3d 530, 533 (10th Cir. 1995)).

### III.  CONCLUSION

Accordingly, IT IS ORDERED THAT:

(1)     This denial of Supplemental Security Income benefits is REVERSED;

(2)     This matter is REMANDED to the Commissioner for further proceedings

consistent with this Order; and

(3)     This case is DISMISSED WITHOUT PREJUDICE.

DATED:  September   30  , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge